# SNOW v. UTAH AUTOMOBILE DEALERS ASS'N.

No. 7083.   Decided January 21, 1948.   (188 P. 2d 742.)

---

See 17 C. J. S., Contracts, sec. 386. Degree or quantum of evidence required to establish oral rescission or modification of written contract, see note, 94 A. L. R. 1278. See, also, 12 Am. Jur. 1004.

*Arthur E. Moreton* and *W. D. Beatie,* both of Salt Lake City, for appellant.

*Callister, Callister & Lewis,* of Salt Lake City, for respondent.

McDONOUGH, Chief Justice.

Plaintiff appeals from an adverse judgment in an action upon a written contract which defendant alleges was mutually rescinded.

For some years prior to March, 1941, plaintiff was engaged in the business of furnishing reports to dealers, of new and used car sales and transfers. On March 3, 1941, the parties entered into a written agreement whereby plaintiff agreed to furnish defendant for its member dealers, up to 125 copies of each weekly report, the defendant association being granted the exclusive distribution and sale of said reports to new car dealers within the State of Utah. The instrument provided that it should remain in force until January 1, 1942, and thereafter unless and until one of the parties should give 90 days written notice prior to cancellation and termination of the contract. While the instrument itself specifies no rate of compensation, the parties by oral agreement as incorporated in a resolution of the board of directors of defendant corporation, fixed the compensation at $300 per month.

At the time the contract was executed, the plaintiff was the executive secretary of defendant association, and after the execution of the contract and up to January 1942, plaintiff had a check for $300 made out to himself each

month, but thereafter he prepared no checks in such sum, although he continued as executive secretary of defendant association until December 1, 1943. He had custody of the check book during his tenure as executive secretary, and it was his duty to prepare checks to cover current bills. He supervised the mailing of weekly car sales reports up to January 1, 1942, with envelopes and stamps furnished by defendant association. He shared an office with defendant association during his tenure as executive secretary.

Shortly after January 1, 1942, there was a conference between plaintiff and the directors of defendant association with respect to the necessity for curtailment of expenses due to conditions incident to the war. There is competent evidence in the record from which the court could find that at the time in question in January, 1942, the president of the defendant association stated that due to the curtailment of manufacture of cars for general distribution through dealers except upon priorities, many of the dealers who were members of the association would probably discontinue business, and that it would be necessary for the association to curtail expenses, and consequently the arrangements theretofore made for distribution of the weekly sales reports would have to be discontinued; that plaintiff stated he would like to continue as executive secretary on a curtail basis and have the association pay the office rent; that it was agreed that plaintiff was at liberty to solicit members of the association to sell the weekly car sales reports to them directly; and that the association would no longer distribute such reports. There is also evidence that some of the car dealers were notified by plaintiff shortly after this meeting in January, 1942, that the association was no longer issuing these reports, and that one of more members of the association subscribed for these weekly reports directly with plaintiff and paid the monthly subscription rate therefor to plaintiff, where as during the period of March to December, 1941, dealers who were members of the defendant association each received one copy of each issue through the association as a membership

privilege. It is not disputed that in January, 1942, the plaintiff knew such reports were no longer to be mailed by the association to its members. In fact, he stated that he was so advised. However, he said there were copies available at the jointly occupied offices which could have been mailed to members if the association had seen fit to do so.

Plaintiff's exhibits show that after the execution of the written contract, the caption "Official of the Utah Automobile Dealers' Association" was placed on the weekly car sales reports, and that such caption was discontinued after February 15, 1942, so that after the latter date the reports were issued with approximately the same heading which they bore prior to the date of execution of the written contract.

Defendant association agreed to pay plaintiff for any special services rendered by him after the date of the meeting in controversy. At no time prior to filing suit in 1946 did he claim that he was not paid what was due or owing to him. He started his suit on the theory that he was entitled to draw $300 per month from January 1942 to date of suit because no written notice of cancellation had been given by defendant; but he modified his claim in that he claimed $300 per month only from January 1942, to December 1, 1943, when he ceased to be executive secretary of defendant association, and when the joint office arrangement was discontinued.

In seeking reversal of the judgment, the plaintiff makes three principal contentions: (1) That no written notice of cancellation was given by defendant association in accordance with the terms of the contract. (2) That there is no clear and convincing evidence of rescission. (3) That there is no sufficient pleading to permit introduction of the evidence offered by defendant.

However, the fact that there was incorporated into the contract of the parties a provision for termination thereof by unilateral action, would not preclude rescission by mutual agreement. This is apparently conceded by appellant, but he contends that the evidence of mutual

rescission is not clear and convincing. We are of a contrary opinion. The evidence of agreement to rescind plus the actions of the parties in recognition of abrogation of the contract for a period of almost two years, clearly support the finding below on that issue.

Plaintiff had custody of the check book, and it was his duty as executive secretary of defendant association to prepare the checks for signature to meet the current obligations of the association. After the meeting in question, he prepared no more checks in the sum of $300 in favor of himself. He mailed no more reports, and he took off the caption of the report, the phrase, "Official of the Utah Automobile Dealers' Association," about a month later. He informed at least one of the members of the association that such reports were no longer being issued to members and that such reports were available by direct subscription with him, and that he was paid direct for such reports. The association gave up its right to the exclusive sale and distribution of weekly car sales reports in the State of Utah which had been granted by the terms of the contract. Plaintiff issued those reports to subscribers himself, and he treated the contract as abrogated.

The plaintiff was executive secretary of the defendant association at the time of the meeting in controversy, and as such it was his duty to keep proper minutes of the business transacted at such meeting. While he testified that he turned the minute book over to his successor in office, his successor denied that he did and also testified that several requests were made for the delivery to him of the minute book for 1942 and that the same was never delivered. Under the circumstances, the court could have found that such minute book was not surrendered by plaintiff and that the minutes were not available to defendant. The testimony of the officers of defendant association as to what transpired at the meeting in controversy, was clear and convincing. No minutes were available to show anything to the contrary. The testimony was competent

and relevant, and the trial court was entitled to give credence to it.

Nor is the contention valid that the pleadings of defendant were insufficient to permit introduction of the evidence offered by it. Plaintiff pleaded performance only in general terms. By general denial defendant put in issue the claim of performance as alleged. Assuming that ■ such plea standing alone, were demurrable for failure to specifically point out lack of performance, coupled with such plea was a specific allegation of mutual rescission. Plaintiff was sufficiently informed that defendant would attempt to prove that the written contract was not performed after January 1, 1942, because of an agreement abrogating such contract.

The judgment is affirmed, with costs to respondent.

PRATT, WOLFE, WADE, and LATIMER, JJ., concur.